Garland J.*
The plaintiffs allege that they are the *52 owners of twenty-five bales of cotton, marked L. & T.; also of a quantity of unginned, and ginned cotton, in the gin and cotton-house on the plantation, where Wm, L. Gray and his wife reside ; that they purchased the same of said Gray and wife, and, took possession of it, by their agents, who hold it for their use and benefit. They say that the unginned cotton was left on the plantation for the purpose of being ginned and pressed, it not being, at the time of its delivery, in such a state as to enable them to remove it. They further allege that, notwithstanding their right and title to this property, the Sheriff has, under an execution issued in favor of Montfort Wells, seized and taken all the aforesaid cotton into his possession, and threatens to sell the same, and that he will do so, unless restrained; wherefore the petitioners ask for an injunction, and that the property be adjudged to them.
The defendants deny that the cotton is the property of the plaintiffs, and pray for a dissolution of the injunction, with damages, &c.
The facts of the case are, that Gray and wife, the debtors in the. execution, were largely indebted to the plaintiffs. In December, 1842, Gray applied to the agent of the plaintiffs, to know if he would purchase his crop of cotton for the plaintiffs, and give him credit on the debt he was owing to them. The agent agreed to do so; and it was stipulated that the plaintiffs should give Gray the current price in New Orleans for the cotton, it being understood as a sale by weight; and that credit should be given for it on the obligation held by plaintiffs. As soon as this was agreed to, the general agent of the plaintiffs in the parish, selected Mr. Texada as his agent to receive the cotton; and, in the presence of Gray requested him to do so, and gave him a written procuration to that effect accordingly. Texada the next day, with two of the neighbors of the parties, went to the plantation of Gray, and in the gin and cotton-house, found a quantity of cotton in the seed, which they estimated would make about eighty bales, when Gray told them that he then delivered the cotton to Texada, as agent for the plaintiffs; and upon being asked what he had gained by such a sale, he said he had gained the risk of keeping the cotton ; and, that if it should be lost, he would hold the plaintiffs *53 responsible for it. The witnesses say that the sale was spoken of publicly ; and Texada says, that he did not consider it a sham sale, but as a real transaction. The cotton was not removed from the place, but left to be ginned and pressed into bales by Gray. When twenty-five bales had been ginned and packed, Texada put the initials .of the names of the plaintiffs on them ; and Gray had them hauled to the usual landing on Red River, to be sent by the first steamer that should pass to New Orleans. While they were there, the sheriff seized them under the execution in favor of Wells ; and, at the same time, seized all the un-ginned cotton on the plantation. Mr. Ogden the agent of the plaintiffs, exhibited, on the trial, his power of attorney which is a very general one, in relation to the means he can use to collect the debts owing to the plaintiffs on Red River; but it does not contain an express power to purchase property for his principals, which we do not in the present case consider material. Some short time after the bargain he had made with Gray, he informed his principals of it, and they have not disapproved of his act.
The court below, at first dissolved the injunction, with heavy damages, but granted a new trial; and when the case was heard again, the injunction was maintained for the proceeds of the sale of the twenty-five bales of cotton, and dissolved as to the ungin-ned cotton ; the whole having been sold by consent, and the proceeds in deposit made to represent the cotton itself. From this judgment, the defendant Wells has appealed; and the plaintiffs in this court pray, that it be so amended, as to give them the proceeds of the unginned cotton.
That the agents of the plaintiffs and Gray were acting in good faith in this transaction, we have no doubt; and we have endeavored to bring our minds to the conclusion, that the judgment of the inferior court was correct; but after as mature consideration as we have been able to bestow on the case, we are unable to come to that result.
The sale between the parties was no doubt good, as soon as there was an agreement for the price and the object; and each party had a right to compel the other to perform the contract, by delivering the property in the manner directed by law. But the question at once arises, whether it is perfect as to third persons ; *54 and we think it is not, until there is a delivery in some of the modes the law directs. The sale in this case was by weight. The purchaser was to give the current price per pound, for the cotton. It is not usual to sell that kind of produce in a lump (en bloc;) and here it is not pretended that such was the contract. Article 2433 of the Code, says that, “ when goods, produce, or other objects are not sold in a lump, but by weight, by tale, or by measure, the sale is not perfect, inasmuch as the things sold are at the risk of the seller, until they are weighed, counted, or measuredbut the buyer may, in virtue of the agreement, compel a delivery. But if the- thing has been sold in a lump, then the sale is perfect, although there is no delivery by weight, count, or measure. Art. 2434. As soon as the contract of sale is completed by a delivery, the thing is at the risk of the buyer. Art. 2442. Therefore the rule of res peril domino suo, has become a well established principle in the contract of sale.
The compilers of the Code, after having settled the principles we have stated, proceed to point out the mode of making a delivery ; and article 2452 says, that “ it is the transferring of the thing sold into the power and possession of the buyer.” The Civilians all consider, that it is essential that the thing shall be under the control, and in the power of the purchaser. If the effects be moveable, the thing passes by actually giving it into the care of the buyer. If the thing sold be in a building where it is kept, there must be a delivery of the key; but if the thing cannot be transported at the time of sale, the consent of the parties will be sufficient. Art. 2453.
In the case before us, there was not a sale en bloc. The cotton was never weighed, either before or after it was pressed. The key of the buildings in which the unginned cotton was, never was delivered to Texada. It is not shown that the cotton could not be transported elsewhere; and, in fact, we see none of the leading requisites of a good delivery established. The fact of putting the initials of the plaintiffs on the bales, is one mark of ownership ; and if the sale had been at so much per bale, instead of per pound, it would, in our opinion, have been good ; and had the bales been weighed, before or after being hauled to *55 the landing, the delivery would have been complete, and the sheriff would not have had a right to seize.
The counsel for the plaintiffs rely much on the case of Shuff v. Morgan et. al., (9 Martin 592,) to show that, the delivery has been sufficient. An examination of that case shows, that it was different from this. Matthews the debtor, sold Shuff a flat boat, and 20,000 hoop poles, which were in it. The boat and poles were put into the possession of Shuff, and he had a part of the price. His laborers were employed on the boat for several days, counting the poles and landing them from the boat, when the attachment was levied. Under these circumstances, the cout held the sale good, and dismissed the seizure. There are some striking points of difference, between that case and the present. There the thing was under the control, or in. the power of the purchaser; but not so with the plaintiffs. Gray had the keys of the houses, if there were any; he had the possession of the buildings, and could enter at his pleasure. He was bound to gin and pack the cotton in bales, which, in some measure, made the delivery a suspensive condition. The sale was not of cotton with the seed in it, but of cotton with the seed out, and ready for market; it must, therefore, necessarily have remained under the control of the vendor, and that being so, the delivery was not good.
It appears to us, that this.case approaches that of The Planters Bank of Mississippi v. Crane, (2 Robinson, 490,) nearer than any other; and as we do not feel disposed to depart from what seems to be the clear letter of the law, for the purpose of seeking its spirit, we are compelled to decide, that the court below was in error, in maintaining the injunction for the proceeds of the twenty-five bales of cotton, and so far the judgment must be reversed.
The counsel for the plaintiffs strenuously contend that as there had been a sale of the property, the sheriff could not seize it, although the sale were fraudulent, but that an action must be brought to annul it; and he cites various decisions of this court, in which it has been decided, that where real property has been apparently legally conveyed, by an authentic act, or by one under private signature, duly recorded, a seizure could not be made, but an ac *56 tion must be brought to set aside the sale ; but the counsel have not produced, and they probably never will be able to produce a decision, in which this court has said, or will say, that a parol agreement to sell personal property, protects it from seizure where there has been a legal delivery. It is, therefore, ordered and decreed, that the judgment of the district court be reversed, so far as it maintains the injunction against the defendants for the sum of $697 72, the proceeds of the twenty- five bales of cotton seized by the sheriff, and the injunction is for that sum dissolved ; and the said judgment is, in other respects affirmed, the plaintiffs paying the costs in both courts, and one per cent damages on the amount of the proceeds of the sale of the said twenty-five bales of cotton.

 This-judgment, and the four preceding, were pronounced in October, 3844, but did not become final, by the lapse of three judicial days, until the present term.